Filed 4/3/25  Kavanaugh v. Klein CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| RYAN KAVANAUGH, | B327155 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21SMCV01868) |
| v. | |
| ETHAN KLEIN et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, H. Jay Ford III, Judge.  Affirmed.

Heah Bar-Nissim and Rom Bar-Nissim for Defendants and Appellants.

Novian & Novian, Farhad Novian and Lauren Woodland; Meier Watkins Phillips Pusch, and Amy McCann Roller, for Plaintiff and Respondent.

# I. INTRODUCTION

Ryan Kavanaugh (Kavanaugh) brought an action against Ethan Klein (Klein) and Ted Entertainment, Inc. (TEI) (defendants) for defamation and defamation by implication alleging they falsely accused him of running a Ponzi scheme.[1] The trial court denied defendants' anti-SLAPP[2] motion to strike Kavanaugh's complaint. We affirm.

# II. BACKGROUND

## A. *The Parties*

Kavanaugh's complaint alleges Kavanaugh is a film and television producer, entertainment executive, and entrepreneur.

---

[1] "'A Ponzi scheme is a fraudulent investment scheme where "[m]oney from the new investors is used directly to repay or pay interest to old investors, [usually] without any operation or revenue-producing activity other than the continual raising of new funds."'" (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 666, fn. 1 (*Peregrine Funding*).)

[2] "A 'SLAPP' is a '"strategic lawsuit against public participation"' [citation], and special motions to strike under [Code of Civil Procedure] section 425.16 [(section 425.16)] are commonly referred to as '[a]nti-SLAPP motions' [citation]." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1007, fn. 1 (*Bonni*).) As we explain below, litigation of an anti-SLAPP motion is a two-step process to determine if an action is meritless and might chill the exercise of a defendant's rights to speak and petition on matters of public concern. (*Id.* at pp. 1008–1009.)

Kavanaugh's media studio Proxima Media (Proxima) owns a majority interest in Triller, Inc., a social media and entertainment company that operates the video-sharing application and social networking platform Triller. Triller, Inc. is "affiliated" with Triller Fight Club II LLC (Triller Fight Club II), a pay-per-view fight streaming service.

According to Kavanaugh's complaint, Klein is a YouTube content creator who produces and stars in videos. Through his company TEI, Klein and his wife Hila Klein operate two YouTube channels—"H3H3 Productions" and "H3 Podcast." The videos Klein produces and stars in air on those channels. In addition to publishing Klein's "various YouTube podcasts," TEI also publishes Klein's "@h3h3productions" Twitter[3] account.

B.     *The June 7, 2019,* Variety *Article*

On June 7, 2019, *Variety* magazine published an article entitled, "Ryan Kavanaugh Accused by Ex-Partner of Running a Ponzi Scheme" (the *Variety* article.) The *Variety* article stated Elon Spar filed a lawsuit against Kavanaugh in Los Angeles Superior Court on June 6, 2019, alleging Kavanaugh persuaded him to go into business with Kavanaugh under false pretenses. Spar had developed an idea for a stock exchange in which buyers could purchase equity in film projects. According to Spar's lawsuit, Kavanaugh falsely told Spar he had hundreds of millions of dollars in commitments to finance films under Proxima.

---

[3]     Although Twitter has since been renamed "X," we refer to the platform as "Twitter," the name of the platform at the time this action was filed.

The *Variety* article quoted Spar's complaint as alleging, "'Over time, as Kavanaugh withdrew and replaced one funding proposal after another and each of his lies was exposed, it became apparent to Spar that Kavanaugh was operating Proxima and its related entities as essentially a Ponzi scheme, using meager new investment capital to satisfy old debts, diverting corporate funds for personal use (instead of paying his employees and contractors), and manipulating the corporate books and records to conceal his misrepresentations.'" The article attached a copy of Spar's verified complaint (the Spar complaint), which bore the watermark, "UNFILED."[4]

The *Variety* article stated Kavanaugh filed a lawsuit for breach of contract against Spar after Spar filed his action. Kavanaugh's action alleged Proxima had invested $2 million into the film stock exchange idea, but Spar wanted a bigger commitment. That conflict led to a falling out between Kavanaugh and Spar and Spar informed Kavanaugh he no longer wanted to work with Kavanaugh on the project.

Within a day, *Variety* updated its article to inform its readers that Kavanaugh's representative sent *Variety* a

---

[4] In support of their anti-SLAPP motion, defendants submitted the declaration of Eriq Gardener, a journalist and former employee of *The Hollywood Reporter.* In his declaration, Gardner explained that the Los Angeles County Superior Court has a media portal that enables members of the media to receive instantaneous access to all court filings. Complaints accessed through the portal that have been filed but are still being processed have an "UNFILED" watermark on them. On or about June 6, 2019, Gardner used the media portal to access the Spar complaint and a complaint Kavanaugh filed against Spar. Spar's verified complaint had an "UNFILED" watermark on it.

statement that Kavanaugh and Spar had "'satisfactorily resolved all of their issues.'" According to *Variety*, the statement accused *Variety* and *The Hollywood Reporter* of attempting to smear Kavanaugh and Spar by quoting from their lawsuits against each other. The statement claimed the dueling complaints "'were private documents'" that "'went public'" by "'mistake.'" Neither complaint "'was intended to be legally filed'"—they were "submitted to the court by accident."

The *Variety* update included a retraction from Spar. According to *Variety*, "Spar apparently has some regrets . . . , saying that Kavanaugh is not really running a Ponzi scheme, as he alleged in his suit . . . ." According to Spar, "'[Kavanaugh] has been funding the ESX operation himself . . . . To my knowledge based on information provided to me, [Kavanaugh] has and is investing heavily in this business and any reference to ESX or any related business as a "Ponzi Scheme" is not accurate. He is a visionary thinker and I wish him the best of luck in his future endeavors. He and I have no remaining disputes.'"[5]

_____

[5] On appeal, defendants label the statement from Kavanaugh's representative and Spar's retraction, as reflected in the updated *Variety* article as the "Hearsay Statements." They contend the trial court improperly relied on these inadmissible statements. In their trial court papers in support of their anti-SLAPP motion and at oral argument, defendants characterized the representative's statement and Spar's retraction as hearsay but did not object to the admission of the updated *Variety* article that included the statements. Accordingly, to the extent defendants contend the court erred in admitting the updated *Variety* article, defendants have forfeited their argument on appeal. (Evid. Code, § 353, subd. (a) ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence

C.     *Triller Fight Club II's Copyright Action*

On April 17, 2021, Triller Fight Club II broadcast a pay-per-view fight and music event.  On April 22, 2021, TEI used part of the broadcast in a podcast episode.  On April 29, 2021, Triller Fight Club II brought an action against defendants (sued under the names "H3H3 Productions" and "The H3 Podcast") and others for copyright infringement and other claims over the use of the broadcast footage (the copyright action).  Kavanaugh was not a party to the copyright action, but Klein believed Kavanaugh was "behind" and financing it.

D.     *The Alleged Defamatory Publications*

Kavanaugh's complaint alleges that beginning on June 11, 2021, Klein launched a campaign to harass and defame him in

unless:  [¶]  (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"]; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725 [the failure to object to the admission of hearsay documents in the trial court forfeits the issue on appeal]; *In re Marriage of Kerry* (1984) 158 Cal.App.3d 456, 466 [the failure to object to the admission of an affidavit as hearsay "waives the defect[ ], and the affidavit becomes competent evidence"].)

In any event, defendants' argument fails on the merits. The trial court did not consider the updated *Variety* article for the truth of the matters asserted, i.e., that the verified complaint was filed by mistake and Kavanaugh was not running a Ponzi scheme.  Instead, the court referred to the statements in the updated *Variety* article to show that Klein knew that "the factual basis for his statements was both incorrect and incomplete."

6

retaliation for Triller Fight Club II's copyright action. Klein used his YouTube channels and other social media platforms to disseminate the defamatory accusation in the *Variety* article that Kavanaugh ran a Ponzi scheme. Within hours of its publication in *Variety*, that accusation had been retracted and the article had been corrected. Klein knew of the retraction and correction but repeatedly republished the false accusation over the following months. Kavanaugh's defamation and defamation by implication causes of action are based on the following alleged podcast statements and tweets identified in paragraphs 68 through 80 of the complaint (the challenged statements)[6]:

"68.   In a June 11, 2021 episode of H3 After Dark titled 'And the Number of Babies Is . . .' (#40), Klein said:

"a.   'According to his ex-partner he runs a Ponzi scheme. That sounds super illegal. Shady. That's not who I'd want running my business. Triller.'

"b.   'And according to his ex-partner he was running a Ponzi scheme. Like, come on bro. Imagine being Ryan Kavanaugh, according to LA Magazine, I don't want to be sued so yeah. I'm not saying that.'

"69.   In a July 1, 2021 episode of Off The Rails titled 'Trisha's Apology & Ace Family Scam' (#3), Klein said:

"a.   'Triller lies about their numbers. So who knows? Allegedly, what do I know? I know this guy, Ryan Kavanaugh is a piece of shit. I mean*, **he's run a Ponzi scheme** allegedly from his partner. So of course the guy is capable of lying as we all are, but he's allegedly, according to his partner, Ryan Kavanaugh, owner of Triller, Ryan Kavanaugh, look them up. **Owner of**

---

[6]   We omit plaintiff's footnotes that provide web addresses for the challenged statements.

7

*Triller, scammer*, allegedly peace and love.  According to his partner this guy's suing me by the way, what was I talking about?'

"b.    'Ryan Kavanaugh, he's the owner of Triller.  He was the CEO of like a big, uh, I forget the name of it, but he like, they went bank, like super bankrupt.  Super bankrupt.  And then he like got Triller involved and like he was accused of *running a Ponzi scheme*.  He's got a really dark history.  I read this online.  This is not me saying this.  Right.'

"c.    'The owner Ryan Kavanaugh is such a nasty piece of shit . . . [his] business partner alleged he [ran] a Ponzi scheme if you believe that.'

"d.    'Ryan Kavanaugh accused by ex-partner of running a Ponzi scheme.  What a dude who runs a one-star app.  Wow.'

"e.    'Wow.  *Shady as fuck*.  And you know, I heard this guy's looking to go public with Triller.  That'd be a horrible idea for people to invest in Triller.'

"f.    *'Here he is.  Ponzi scheme.*  I first read, *he ran a Ponzi scheme* in [*Variety*] by his ex-partner.  Yeah, here he is.  Ryan Kavanaugh.'

"g.    'Serious guy.  *He's a* film and TV producer, entrepreneur and *Ponzi scheme enthusiast.*  Wait, no, sorry.  That was what his ex-partner said.  No, it's not alleged.  His ex-partner did say that.  Well he made the allegation.  Yeah.  He said he was running a Ponzi scheme.  He was making an allegation, but okay.  You get the idea.'

"h.    'The suit alleges.  That's literally what the Fyre festival guy did.'

"70.    In a July 2, 2021 episode of H3 After Dark titled 'James Charles Returns & Baby Update' (#43), Klein said:

8

"a.     'Who allegedly runs a Ponzi scheme, according to his ex-partner.'

"b.     'This is Ryan Kavanaugh, uh, he's like the, basically, the owner of Triller and uh, his he's been accused of by his partner of running Zynga, Ponzi scam.  And he bankrupted Relativity.  He's just awesome because now he's trying to build Triller and he wants to go public.  And it's like, dude, you bankrupted your last company.  And you've been accused of running a Ponzi scheme.  It's awesome.  And this is the guy who's suing us.'

"c.     'Ryan Kavanaugh, the owner of Triller.  Who's like, who his partner says he's like been involved in a Ponzi scam.'

"d.     'This is really getting around at this guy.  Ryan Kavanaugh was accused of running a Ponzi scheme.  It seems like Ryan Kavanaugh was a really bad guy.'

"e.     'Also, I heard that Ryan, Ryan Kavanaugh was involved in a Ponzi scheme, according to his former business partner.'

"f.     'There's the image of the, uh, Ryan Kavanaugh accused by ex-partner of running a Ponzi scheme.'

"71.   On July 8, 2021, Klein tweeted:  'Every time I think of Ryan Kavanaugh, I think of his business partner alleging he was involved in a Ponzi scheme.'  Klein then re-tweeted his tweet using the H3 Podcast Twitter account, which has more than 300,000 followers.  [The complaint includes a screenshot of the retweeted tweet which includes a photograph of the *Variety* article headline, "Ryan Kavanaugh Accused by Ex-Partner of Running a Ponzi Scheme," with a photograph of Kavanaugh beneath it.]

"72.   On July 8, 2021 Klein tweeted:  'I don't know if [J]ake [Paul] left because of Ryan Kavanaugh specifically but he definitely thought showtime was a better opportunity than triller, and I'm not surprised since the owner Ryan Kavanaugh was accused by his ex-partner of running a Ponzi scheme as published by variety[.]'  [The complaint includes a photograph of the tweet.]

"73.   In a July 8, 2021 episode of Off The Rails titled 'The Biggest Scam in YouTube History' (#4), Klein said:

"a.   'Uh, this is the article that *Variety* published about [Kavanaugh].  You can see, it says *Variety* here.  It's kind of like a, it's a, there's a timestamp here.  It's kinda hard to see it.  Or like how would you call it?  Watermark is right.  But anyway, it says Ryan Kavanaugh accused by ex-partner of running a Ponzi scheme.  So in open court . . . .'

"b.   'Because allegedly, if it's true, what his ex-business partner said about him running a Ponzi scheme, it would mean that he was comfortable deceiving people.'

"c.   'Uh, Ryan accused by ex-partner of running a Ponzi scheme, right?  That was the *Variety* headline.'

"d.   'Show the picture.  Ryan Kavanaugh . . .  He apparently he's bankrupted his previous companies and was accused of creating a Ponzi scheme by his previous business partner.  How does he have investors?  Are they just 20 something?  Trust fund babies.'

"e.   'Was that guy [a] scammer?  I think he was just a, maybe that wasn't a scam it.  Yeah.  Oh, well maybe sort of like, I don't know what exactly Ryan Kavanaugh did, but he did apparently according to his ex-partner written in *Variety* of running a Ponzi scheme.  Right?'

10

"f.     'But if I would say running a Ponzi scheme based on his ex-partner's allegations and open court in *Variety*, that's off the rails.'

"74.     Klein filmed the July 8 episode of Off The Rails in front of a photograph of Mr. Kavanaugh with a caption that repeats the false and defamatory Ponzi scheme claim.  Klein appears to have altered the font size of the *Variety* article headline in the image hanging behind him to de-emphasize the words, 'Accused by Ex-Partner.'  [The complaint includes a screenshot of the podcast including a photograph of the allegedly altered *Variety* article headline with a photograph of Kavanaugh beneath it.]

"75.     On July 11, 2021, Klein posted an Instagram story purporting to depict the *Variety* article beneath a headline asking:  'DO YOU GUYS KNOW THAT RYAN KAVANAUGH WAS ACCUSED BY EX-PARTNER OF RUNNING A PONZI SCHEME?'

"76.     In a July 15, 2021 episode of Off The Rails titled 'im sorry hila' (#5), Klein said:

"a.     'Welcome back everybody, uh, to the, the Ryan Kavanaugh accused by ex-partner of running a Ponzi scheme podcast.'

"b.     'Ryan's this one from the *Variety* article over here in there, accused by ex-partner of running a Ponzi scheme, which we've now clarified was under oath.'

"77.     A July 29, episode of H3 After Dark titled 'Hila Is Back . . . And She's Being Sued' (#45), featured the following exchange:

"a.     Hila Klein:  'You may have heard of Ryan.'
        "Ethan Klein:  'And his bankruptcy.'

11

"Hila Klein: 'And he doesn't always pay people.'

"Ethan Klein: 'There's like a thousand debtors from the bankruptcy. I don't know if you heard but Ryan Kavanaugh, this man here, is accused by his Ex- Partner of running a Ponzi scheme.'

"Podcast Manager: 'That was reported in *Variety*.'

"78. During these remarks, a producer held up this photo in the background: [The complaint includes a screenshot of the podcast and appears to include the same photograph of Kavanaugh beneath the allegedly altered *Variety* article headline that was included in paragraph 74 of the complaint.]

"79. Klein began selling t-shirts to fans that appear to depict Mr. Kavanaugh as a criminal defendant, doubling down on his defamatory suggestion that Mr. Kavanagh runs a criminal enterprise: [The complaint includes a depiction of the t-shirt which shows a person sitting at a table apparently in front of a judge.]

"80. Klein's statements were intended to and did falsely convey that Mr. Kavanaugh engaged in criminal conduct by running a Ponzi scheme. Further, circumstances show that Mr. Klein intended this t-shirt to imply that Mr. Kavanaugh was guilty of financial crimes because during a September 3 episode of H3 After Dark, Klein proposed various t-shirt ideas and asked fans to vote on them, including a t-shirt featuring Mr. Kavanagh's likeness with the word 'SCAM' written above it. This was the design that received the most votes."

12

E.	*Defendants' Anti-SLAPP Motion*

Defendants moved to dismiss Kavanaugh's action "in its entirety" as a SLAPP suit.  Defendants contended that "(a) each and every cause of action in the Complaint arises from protected activity as defined by . . . Section 425.16 (e); and (b) Kavanaugh cannot meet his burden to demonstrate a probability of prevailing as to any cause of action in the Complaint."

The trial court denied defendants' anti-SLAPP motion.  As to the first prong of defendants' motion, the court found Kavanaugh's action arose from activity protected by section 425.16, subdivisions (e)(3) and (e)(4).  Defendants established Kavanaugh and his business dealings, including those with Spar, were issues of widespread public interest and the challenged statements were made on public forums—YouTube channels and Twitter.

As to the second prong of defendants' motion, the trial court found Kavanaugh met his burden to show sufficient facts to sustain a favorable judgment on his defamation and defamation by implication claims.  Kavanaugh presented evidence of a prima facie case that the challenged statements were false assertions of fact and defendants' evidence failed to establish the statements' truth as a matter of law.  Further, Kavanaugh presented prima facie evidence of actual malice and defendants' evidence failed to establish the absence of malice as a matter of law.  Finally, the court found defendants failed to meet their burden to show the challenged statements were fair and true reports of judicial proceedings privileged under Civil Code section 47, subdivision (d) (section 47(d)).

13

## III. DISCUSSION

Defendants assert and Kavanaugh does not dispute the trial court properly found defendants' challenged statements were protected activity under section 425.16, subdivisions (e)(3) and (e)(4) of the anti-SLAPP statute—i.e., that defendants satisfied the first step of the two-step litigation process of an anti-SLAPP motion. Accordingly, this appeal concerns the court's finding on the second step of the anti-SLAPP process. Defendants contend the court erred in finding Kavanaugh satisfied the second step because his action against them does not have even minimal merit as he cannot show the challenged statements were (1) assertions of fact, (2) false, or (3) made with actual malice. Defendants further contend the challenged statements were protected under the fair and true report privilege in section 47(d).

A.    *Legal Principles*

1.    Defamation

The elements of a defamation cause of action are: (1) a publication that is (2) false, (3) defamatory, and (4) unprivileged, and (5) has a natural tendency to injure or that causes special damage. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.) When the defamation plaintiff is a public figure, the plaintiff also must prove the defendant made the defamatory statement with actual malice. (*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 256 (*Reader's Digest*).)

## 2. Defamation by Implication

If a defendant "juxtaposes [a] series of facts so as to imply a defamatory connection between them, or [otherwise] creates a defamatory implication . . . he may be held responsible for the defamatory implication, . . . even though the particular facts are correct.  [Citation.]"  (*Issa v. Applegate* (2019) 31 Cal.App.5th 689, 703, internal quotations omitted (*Issa*).)  "In a case in which a plaintiff seeks to maintain an action for defamation by implication, the plaintiff must demonstrate that (1) his or her interpretation of the statement is reasonable; (2) the implication or implications to be drawn convey defamatory facts, not opinions; (3) the challenged implications are *not* "'substantially true'"; and (4) the identified reasonable implications could also be reasonably deemed defamatory.  [Citation.]"  (*Id.* at p. 707.)

## 3. Anti-SLAPP

"The anti-SLAPP statute is 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern.  [Citations.]  To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)' (*Wilson* [*v. Cable News Network, Inc.* (2019)] 7 Cal.5th [871,] 883–884.)

"Litigation of an anti-SLAPP motion involves a two-step process.  First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e]

15

from" protected activity in which the defendant has engaged.' (*Park* [*v. Board of Trustees of California State University* (2017)] 2 Cal.5th [1057,] 1061 [(*Park*)].)  Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' (*Ibid.*)  If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni, supra*, 11 Cal.5th at pp. 1008–1009.)

"[A]t the second anti-SLAPP step, '"a plaintiff responding to an anti-SLAPP motion must "'state[ ] and substantiate[ ] a legally sufficient claim.'"' [Citation.]  Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" [Citation.]  ". . . However, we neither 'weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'"' [Citation.]" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 791–792.)  "[A] plaintiff's burden at the second anti-SLAPP step is a low one, requiring only a showing that a cause of action has at least 'minimal merit within the meaning of the anti-SLAPP statute.' [Citation.]" (*Id.* at p. 793.)  "Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 700.)

We review the grant or denial of an anti-SLAPP motion de novo.  (*Park, supra*, 2 Cal.5th at p. 1067.)

16

B.    *Analysis*

1.    <u>Assertions of Fact</u>

"'The sine qua non of recovery for defamation . . . is the existence of falsehood.' [Citation.]  Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability.  Although statements of fact may be actionable as libel, statements of opinion [generally] are constitutionally protected.  [Citation.]" (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 112; *Taus v. Loftus, supra,* 40 Cal.4th at p. 720; *Issa, supra,* 31 Cal.App.5th at p. 702.)

"[I]n ascertaining whether the statement in question is sufficiently communicative of provable falsity or actual fact to subject the defendant to liability, courts . . . consider the "'totality of the circumstances. . . .  First, the language of the statement is examined.  For words to be defamatory, they must be understood in a defamatory sense. . . .  [¶]  Next, the context in which the statement was made must be considered. . . .  [¶]  This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed.'"  [Citations.]" (*Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1608; *Issa, supra,* 31 Cal.App.5th at p. 703.)

"[C]onstitutional protection has been accorded "'rhetorical hyperbole," "vigorous epithet[s]," "lusty and imaginative expression[s] of . . . contempt," and language used "in a loose, figurative sense'" [citations] . . . ." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 902.)  However, "such communications may be

17

actionable if they convey false and defamatory information." (*Ibid.*)

The evidence shows defendants intended the challenged statements to be viewed as assertions of fact by their audience. They emphasized that Kavanaugh's "ex-partner" Spar alleged Kavanaugh ran a Ponzi scheme. A person viewing defendants' podcasts or tweets reasonably would assume that Spar, who worked with Kavanaugh on the ESX project, was in a position to know if Kavanaugh was running a Ponzi scheme.

Defendants also sought to bolster the veracity of the challenged statements by stating they were published in *Variety*. In the June 11, 2021, podcast, after directing his viewers to *Variety's* website where they could find the *Variety* article, Klein said, "That's written—that was written by Variety, which is like a pretty—that's like a reputable, you know . . . ." Later, during the July 1, 2021, podcast, Klein again directed his viewers to the *Variety's* website and a podcast member stated, "Why, Variety, that's one of the two major trade papers in the entertainment industry. They're very reputable."

Defendants do not avoid liability for their factual assertions that Kavanaugh ran a Ponzi scheme because they relied on Spar's allegation in his complaint or the *Variety* article's initial report (but not the updated article) on that allegation. (*Gilman v. McClatchy* (1896) 111 Cal. 606, 612 ["If A says B is a thief, and C publishes the statement that A said B was a thief, in a certain sense this would be the truth, but not in the sense that the law means. It would constitute no defense to C, for it would be but a repetition by him of a slanderous charge. His defense must consist in showing that in fact B is a thief"]; (*Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1180

18

["when a person repeats a slanderous charge, even though identifying the source . . . , this constitutes republication and has the same effect as the original publication of the slander"]; *Ray v. Citizen-News Co.* (1936) 14 Cal.App.2d 6, 8–9 ["A false statement is not less libelous because it is the repetition of rumor or gossip or of statements or allegations that others have made concerning the matter"].)

The challenged statements' context also supports a finding that defendants intended the challenged statements to be viewed as assertions of fact by their audience. Defendants' campaign against Kavanaugh was based on their belief he was behind and financing Triller Fight Club's copyright action against them. Defendants used the Ponzi scheme allegation to undermine in the minds of their audience the credibility of the person they believed was behind the copyright action.

Defendants' contention that the "audience interpreted [defendants'] statements as a meme,"[7] even if true, is unavailing. (*Polygram Records, Inc. v. Superior Court* (1985) 170 Cal.App.3d 543, 552, fn. 11 [acknowledging that it is often true that "'humor typically is understood to be humor *and to convey no serious factual allegations about its object*,' [citation]" but explaining that "'humor . . . can give rise to causes of action for defamation' [citation] and that humor is actionable where 'it is used to make a

---

[7] A "meme" is "an amusing or interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media." (Merriam-Webster Online Dict. <https://www.merriam-webster.com/dictionary/meme> [as of Mar. 28, 2025], archived at <https://perma.cc/Z48H-DEKY>.) The length of the broadcasts and statements suggest that the audience did not interpret the statements as a "meme."

19

defamatory point.' [Citation.] In short, . . . ""The principle is clear that a person shall not be allowed to murder another's reputation in jest"" and that ""[if] a man in jest conveys a serious imputation, he jests at his peril."" [Citations.]"].)

Accordingly, Kavanaugh presented sufficient evidence to establish a prima facie case that the challenged statements were assertions of fact, and defendants do not identify sufficient evidence that disproves the challenged statements are assertions of fact as a matter of law.

### 2. Falsity

"A public figure . . . who seeks to recover damages for a defamatory statement bears the burden of proving that the challenged statement was false. [Citation.] The plaintiff cannot be said to have carried this burden so long as the statement appears *substantially* true. To bar liability, "'it is sufficient if the *substance* of the charge be proved true, irrespective of slight inaccuracy in the details." [Citations.] . . . [Citation.] . . . Minor inaccuracies do not amount to falsity so long as "the substance, the gist, the sting, of the libelous charge be justified." [Citations.] Put another way, the statement is not considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." [Citations.]' [Citation.]" (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1021, fn. omitted.)

"[M]ere assertions that a statement is 'false,' even in sworn declarations, do not satisfy a plaintiff's burden to demonstrate falsity. . . . [T]he 'simple negation of the challenged statement fails to fairly meet its substance.' [Citation.]" (*Industrial Waste*

*& Debris Box Service, Inc. v. Murphy* (2016) 4 Cal.App.5th 1135, 1159 (*Industrial Waste*).)

In his opposition to defendants' anti-SLAPP motion, Kavanaugh contended defendants' claim he was running a Ponzi scheme was false. Kavanaugh supported this contention with his July 9, 2019, and March 25, 2022, declarations and a declaration from Michael Lambert, his partner in Proxima. In his July 9, 2019, declaration, Kavanaugh stated he was not running a Ponzi scheme and he and Lambert fully funded Proxima during the time he and Spar were working together to launch ESX. As of July 8, 2019, Kavanaugh bought Lambert's interest in Proxima using only his own capital. In his March 25, 2022, declaration, Kavanaugh stated he was not running and had never run a Ponzi scheme. He and Lambert fully funded Proxima which funded ESX and he eventually purchased Lambert's interest in Proxima using only his own capital. Lambert stated in his March 25, 2022, declaration that prior to July 8, 2019, he was an investor in Proxima and/or related entities that owned ESX. Lambert and Kavanaugh and entities Lambert controlled fully funded Proxima without any additional investors. As of July 8, 2019, Kavanaugh "bought out" Lambert's "interest in Proxima, after which [Kavanaugh] was the sole investor."

Kavanaugh's declarations alone were sufficient to meet his prima facie showing that the challenged statements are false. (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 389 [in an anti-SLAPP case, the plaintiff's declaration denying a claim of perjury was "a sufficient prima facie showing that the accusations [were] false"]; see *Briganti v. Chow* (2019) 42 Cal.App.5th 504, 509–510, fn. omitted [the plaintiff's declaration that she "has never been convicted of, or indicted for, any crime, and she has not stolen

21

thousands of innocent victims' identities" was sufficient to support a prima facie case of defamation in anti-SLAPP proceeding].) Not only did Kavanaugh's declarations deny the general charge that he ran a Ponzi scheme, they also explained why the charge was false—he and Lambert fully funded Proxima and he alone purchased Lambert's interest in Proxima. Accordingly, there was no money from new Proxima investors that could be used to repay or to pay interest to old Proxima investors as part of a Ponzi scheme. (See *Peregrine Funding, supra*, 133 Cal.App.4th at p. 666, fn. 1.) Thus, Kavanaugh's denials that he was running or ever ran a Ponzi scheme were not the sort of "mere assertions" or "simple negations" *Industrial Waste* rejected. (*Industrial Waste, supra*, 4 Cal.App.5th at p. 1159.)

Moreover, apart from Kavanaugh's declarations, Lambert's declaration concerning the funding of Proxima and ESX supports a prima facie case that the claim Kavanaugh ran a Ponzi scheme was false. Lambert stated that Kavanaugh and entities Lambert controlled fully funded Proxima without any additional investors, he was an investor in Proxima and/or related entities that owned ESX, and Kavanaugh "bought out" Lambert's "interest in Proxima, after which [Kavanaugh] was the sole investor."

Defendants do not identify sufficient evidence that disproves the falsity of the challenged statements as a matter of law.

3.    Actual Malice

To prove a defendant made a defamatory statement with "actual malice" a plaintiff must show the defendant knew the

22

statement was false or made the statement with reckless disregard of whether it was false or not. (*Reader's Digest, supra*, 37 Cal.3d at p. 256.)[8] A defendant acts with reckless disregard if the defendant "'made the false publication with a "high degree of awareness of . . . probable falsity," [citation], or . . . "entertained serious doubts as to the truth of his publication," [citation].'" (*Young, supra*, 212 Cal.App.4th at pp. 562–563.)

In assessing actual malice, we apply a "subjective test, under which the defendant's actual belief concerning the truthfulness of the publication is the crucial issue. [Citation.] This test directs attention to the 'defendant's attitude toward the truth or falsity of the material published . . . [not] the defendant's attitude toward the plaintiff.' [Citation.]" (*Reader's Digest, supra*, 37 Cal.3d at p. 257.) "Although the ultimate issue is thus the good faith of the publisher, . . . a defendant cannot 'automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith." (*Ibid.*)

Actual malice may be proved by circumstantial evidence. (*Reader's Digest, supra*, 37 Cal.3d at p. 257.) "'[Evidence] of negligence, of motive and of intent may be adduced for the

---

[8] "In opposing an anti-SLAPP motion, a defamation plaintiff need not establish malice by clear and convincing evidence, the standard applicable at trial. Rather, the plaintiff must meet [his] minimal burden by introducing sufficient facts to establish a prima facie case of actual malice; in other words, [he] must establish a reasonable probability that [he] can produce clear and convincing evidence showing that the statements were made with actual malice. [Citation.]" (*Young v. CBS Broadcasting, Inc.* (2012) 212 Cal.App.4th 551, 563 (*Young*).)

purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.' [Citations.]" (*Ibid.*) Evidence of a defendant's "failure to investigate," "anger and hostility toward the plaintiff," and "reliance upon sources known to be . . . biased against the plaintiff" may, "in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication." (*Id.* at p. 258, fn. omitted.) "[S]uch evidence is relevant only to the extent that it reflects on the subjective attitude of the publisher." (*Ibid.*)

A publisher acts with reckless disregard of whether a statement is true or false when it is aware of true, crucial facts but decides to leave them out of its statement and thereby creates a false impression. (*Montandon v. Triangle Publications, Inc.* (1975) 45 Cal.App.3d 938, 944, 949 (*Montandon*).) Such evidence "is proof of convincing clarity" and supports a finding that the statement was "published not in good faith, but with actual malice." (*Id.* at p. 944; *Fisher v. Larsen* (1982) 138 Cal.App.3d 627, 642 (*Fisher*) [triable issue of fact on summary judgment as to actual malice when, "Although [the defendant] says she relied on media accounts, including the false report in [another defendant reporter's] article detailing [the plaintiff's] march with the [illegally] striking teachers . . . , she ignores [the plaintiff's] published, repeated denials of support for teachers' strikes and the editorial apology for the [reporter defendant's] misstatements"].)

Kavanaugh presented sufficient evidence to establish a prima facie case of actual malice. The *Variety* article, including the update with the statement from Kavanaugh's representative and Spar's retraction, was published in June 2019. Two years

24

later, defendants, who admitted in their broadcast to being angry with Kavanaugh about Triller Fight Club II's copyright action against them, began their retaliatory campaign against Kavanaugh which included their allegations that he ran a Ponzi scheme. Defendants' campaign, however, omitted, in almost all instances,[9] the true and crucial facts that *Variety* updated its article to reflect that according to Kavanaugh's representative, neither Kavanaugh nor Spar intended their complaints to be "legally filed" and Spar retracted his allegation. Defendants' omission "is proof of convincing clarity" that supports a finding defendants' Ponzi scheme statements were not published in good faith but with actual malice. (*Montandon, supra*, 45 Cal.App.3d at p. 944; *Fisher, supra*, 138 Cal.App.3d at p. 642.)

Defendants do not identify sufficient evidence that shows a lack of actual malice as a matter of law.

### 4. Fair and True Report Privilege

"Under section 47[(d)][10], the fair and true reporting privilege protects a 'fair and true report in, or a communication to, a public journal, of . . . a judicial . . . proceeding, or . . . [of] anything said in the course thereof.' It . . . is an absolute privilege—that is, it applies regardless of the defendants' motive

---

[9] Defendants concede that in "most instances" they did not discuss Spar's retraction.

[10] Section 47(d) provides that "[a] privileged publication or broadcast is one made: [¶] . . . [¶] (1) By a fair and true report in . . . a public journal, of (A) a judicial . . . proceeding, or (D) of anything said in the course thereof . . . ."

25

for making the report—and forecloses a plaintiff from showing a probability of prevailing on the merits. [Citation.]" (*Argentieri v. Zuckerberg* (2017) 8 Cal.App.5th 768, 787 (*Argentieri*).)

"To be fair and true, the report must [capture] the substance, the gist or sting, of the subject proceedings as measured by considering the natural and probable effect [of the report] on the mind of the average reader. [Citation.] The defendant is entitled to a certain degree of flexibility/literary license in this regard, such that the privilege will apply even if there is a slight inaccuracy in details—one that does not lead the reader to be affected differently by the report than he or she would be by the actual truth. [Citation.]" (*Argentieri, supra*, 8 Cal.App.5th at pp. 787–788, internal quotations omitted.)

"California courts have construed the phrase, 'judicial proceeding,' broadly to include the filing of a complaint. [Citations.] Thus, fair and true communications to the news media about allegations in a complaint are covered by the privilege. [Citation.]" (*Healthsmart Pacific, Inc. v. Kabateck* (2016) 7 Cal.App.5th 416, 432.)

Assuming without deciding the Spar complaint was part of a judicial proceeding and the challenged statements were made in public journals, we nevertheless hold the fair and true report privilege does not apply to the statements quoted in the complaint that are alleged to be defamatory.[11] Defendants'

---

[11] "There is some dispute in the case law as to which party bears the burden of proof on an affirmative defense in the context of an anti-SLAPP motion. Some cases state that 'although section 425.16 places on the plaintiff the burden of substantiating its claims, a defendant that advances an affirmative defense to such claims properly bears the burden of proof on the defense.

statements that Kavanaugh's partner accused him of running a Ponzi scheme were not fair and true because, as they concede, they omitted, in almost all instances, the context that *Variety* published an updated article stating that neither Kavanaugh nor Spar intended their complaints to be "legally filed" and Spar retracted his allegation. Spar had explained, "'[Kavanaugh] has been funding the ESX operation himself . . . . To my knowledge based on information provided to me, [Kavanaugh] has and is investing heavily in this business and any reference to ESX or any related business as a "Ponzi Scheme" is not accurate.'" Without Spar's retraction, defendants' reports led the listener "to be affected differently by the report[s] than he or she would be by the actual truth." (*Argentieri, supra*, 8 Cal.App.5th at p. 788.) Thus, the fair and true report privilege does not apply to the complained of statements.

---

[Citation.]' ([E.g., ]*Peregrine Funding,* [*supra,*] 133 Cal.App.4th [at p.] 676.) Others suggest that the litigation privilege presents "'a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing. [Citations.]" [Citation.]' (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1485.)" (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 683.) Based on the evidence presented, we need not resolve this dispute as the evidence shows the privilege does not apply regardless of which party has the burden of proof.

## IV.  DISPOSITION

The order is affirmed.  Kavanaugh is entitled to his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.